IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MATTHEW BYRNES**, | |
| Plaintiff, | |
| vs. | Case No. 21-CV-2086-DDC-ADM |
| **ST. CATHERINE HOSPITAL**, **CENTURA HEALTH CORPORATION**, and **CENTURA HEALTH PHYSICIAN GROUP**, | **DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| Defendants. | |

COME NOW Defendants, St. Catherine Hospital ("SCH") and Centura Health Corporation[1] ("CENTURA") for their Answer to Plaintiff's Third Amended Complaint (Doc. 87) and provide as follows:

1.      Denied. Defendants did not retaliate, discriminate, or engage in any tortious acts or omissions against Plaintiff.

2.      Defendants are without sufficient information to admit or deny Plaintiff's statement of his own self-serving opinion regarding his alleged reputation as an "exceptional and well-respected surgeon" and, therefore, deny the same. Defendants

---

[1] Defendant Centura Health Physician Group ("CHPG") manages the clinical practices of SCH. Physicians are employed by and receive W-2s from SCH. CHPG is a trade name of CENTURA, is a department of CENTURA and is not a legal entity capable of being sued. All allegations relating to CHPG in Plaintiff's Complaint are answered herein by and on behalf of CENTURA.

4858-2995-3124.1

admit Plaintiff was previously employed by SCH. Defendants deny all remaining allegations.

3.      Denied.

4.      Denied.

5.      Defendants are without sufficient information to admit or deny whether any nurses actually reported concerns to Plaintiff, and, if so, when those concerns were brought to Plaintiff's attention and/or what Plaintiff believed and, therefore, deny all allegations relating to the nurses' alleged reporting of concerns and Plaintiff's alleged beliefs. Defendants deny Plaintiff acted in good faith or that he reported the nurses' alleged concerns to individuals and/or entities with authority to address those concerns. Defendants admit Plaintiff submitted a written complaint to the President of Medical Staff reporting second-hand allegations of sexual harassment and substandard clinical care.

6.      Denied.

7.      Admitted in part, denied in part. SCH terminated Dr. Byrnes' employment on February 12, 2020 for legitimate, non-discriminatory, non-retaliatory reasons, roughly six months after Plaintiff reported alleged concerns regarding Dr. Kessler to the President of Medical Staff. There was and is no causal connection, either substantively or in temporal proximity, to Plaintiff's August 31, 2019 complaint submitted to the President of Medical Staff. Notably, Medical Staff had no authority to take any action with respect

to Plaintiff's employment at SCH, made no employment decision with respect to Plaintiff's employment at SCH, and played no role in the decision-making process with respect to the termination of Plaintiff's employment.

8.      Denied. Defendants did not retaliate or discriminate against Plaintiff. SCH terminated Plaintiff's employment for legitimate, non-discriminatory, non-retaliatory reasons which had no causal relationship, in substance or temporal proximity, to Plaintiff's August 31, 2019 complaint submitted to the President of Medical Staff.

9.      Defendants admit Plaintiff lost his job. Defendants deny the remaining allegations set forth in Paragraph 9 of the Complaint.

10.     Denied. To the extent Plaintiff has suffered economic or other damages, those damages were caused in whole by Plaintiff's own conduct, actions, and/or inactions. Defendants did not engage in any unlawful conduct that was or is the proximate cause of any damages allegedly suffered by Plaintiff.

11.     Denied. Plaintiff did not engage in activity protected by Title VII of the Civil Rights Act of 1964, as amended, and, to the extent a complaint to the Medical-Executive Committee ("MEC"),[2] which was not Plaintiff's employer and had no authority over employment matters concerning Plaintiff, can be deemed protected activity under Title

---

[2] MEC and Medical Staff are used interchangeably herein and references the St. Catherine Hospital Medical Executive Committee.

4858-2995-3124.1

VII, Plaintiff suffered no adverse employment action as a result of his August 31, 2019 complaint submitted to the President of Medical Staff.

12.     Denied. Plaintiff did not engage in activity protected by K.S.A. 65-4928 and suffered no adverse employment action because of his August 31, 2019 complaint to Medical Staff.

13.     Denied. Plaintiff's employer, SCH, did not request Plaintiff to submit to a psychological assessment, did not regard Plaintiff as disabled as that term is defined by the Americans with Disabilities Act, and terminated Plaintiff's employment for legitimate, non-discriminatory, non-retaliatory reasons. MEC, which is responsible for credentialing and ensuring quality of care, requested Plaintiff to voluntarily undergo a psychological assessment. MEC subsequently recanted that request. MEC, which did not employ Plaintiff, did not terminate Plaintiff's employment or terminate Plaintiff's medical privileges following his termination from employment at SCH. Rather, Plaintiff freely and voluntarily resigned his Medical Staff privileges on February 13, 2021.

14.     Denied.

### JURISDICITON AND VENUE

15.     Defendants admit the Court has subject matter jurisdiction over the claims raised in Plaintiff's Complaint. Defendants, however, deny engaging in any unlawful conduct that warrants the exercise of that jurisdiction.

16.     Defendants admit that venue in this court and personal jurisdiction are proper. To the extent alleged in Paragraph 16, Defendants deny Kansas City is an appropriate venue for trial. Defendants further deny engaging in any unlawful employment practices.

## PARTIES

17.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 17 and, therefore, deny the same.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Defendants admit that Centura's website, https://www.centural.org/about-centura provides that Centura Health is "[t]he region's largest health care network, with a very important mission."

24.     Admitted.

25.     Defendants can neither admit nor deny the allegations in Paragraph 25 because it is unclear what is the source of the language quoted therein and, therefore, denies the same. Defendants admit SCH is identified on Centura's website as one of many Centura Health Hospitals.

4858-2995-3124.1

26.    Admitted in part, denied in part. Defendants admit that CENTURA has oversight responsibility for some, but not all, operations at SCH. SCH has responsibility for day-to-day operations, including but not limited to personnel matters.

27.    Denied. CHPG is a registered trade name of CENTURA. CHPG is not an organized entity capable of being sued.

28.    Admitted in part, denied in part. The number of medical providers within the CHPG network and the number of locations that are part of the CENTURA network change on a regular basis. Defendants admit CHPG manages clinics and medical providers across affiliates of CENTURA.

29.    Admitted.

30.    Admitted with respect to Defendants SCH and CENTURA, denied with respect to CHPG. CHPG is not a legal entity, but rather a trade name of CENTURA. CHPG, therefore, has no employees. Defendants deny that CENTURA employed Plaintiff.

31.    Admitted with respect to Defendants SCH and CENTURA, denied with respect to CHPG.

32.    Admitted with respect to Defendants SCH and CENTURA, denied with respect to CHPG.

33.    Denied. Plaintiff was employed by exclusively by SCH. SCH engaged in no unlawful conduct with respect to Plaintiff's employment, but rather terminated Plaintiff's

employment for legitimate, non-discriminatory, non-retaliatory reasons. MEC leadership, which did not employ Plaintiff, was responsible for oversight of credentialing and quality of care. No actions taken by MEC were employment actions that could give rise to Plaintiff's claims asserted herein against any Defendant. MEC leadership may only make decisions about Medical Staff membership/privileges. Plaintiff freely and voluntarily resigned his Medical Staff privileges on February 13, 2021. Neither CENTURA nor CHPG employed Plaintiff. No Defendant engaged in any unlawful activity related to Plaintiff.

34.     Denied. See Paragraph 33 above, the contents of which are incorporated herein by reference.

35.     Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 35 because Plaintiff fails to identify the conduct allegedly engaged in by Defendants' employees and/or agents and, therefore, denies the allegations.

**FACTS**

36.     Defendants admit that SCH employed Plaintiff during the period set forth in Paragraph 36. Defendants deny all remaining allegations.

37.     Admitted.

38.     On information and belief, the allegations in Paragraph 36 are admitted.

7

39.     Defendants are without sufficient information to admit or deny the allegations in Paragraph 39 and, therefore, deny the same.

40.     The term "specialized" is too subjective to permit an informed response to the allegations in Paragraph 40. Defendants admit only that Plaintiff, while employed by SCH, performed general surgery and critical care.

41.     Admitted.

42.     Admitted in part, denied in part. Defendants deny SCH's ratings improved significantly during Plaintiff's tenure as CMO, deny Plaintiff led SCH through three different stroke certifications, admit SCH achieved gold star plus accreditation during Plaintiff's tenure as CMO, and are without sufficient knowledge to admit or deny the remaining allegations in Paragraph 42 and, therefore, deny the same.

43.     Defendants are without sufficient information to admit or deny whether any nursing staff members reported concerns to Plaintiff and, if so, the date and/or substance of those concerns, therefore, the allegations in Paragraph 43 are denied.

44.     Defendants are without sufficient information to admit or deny whether nurses brought concerns to Plaintiff and, if so, whether they unreasonably feared retaliation and, therefore, deny the same.

45.     Defendants admit that on August 31, 2019 Plaintiff reported alleged concerns about another physician to MEC in a letter delivered to Dr. William Freund,

who was President of Medical Staff. At all times relevant, Plaintiff was aware MEC had/has no authority over personnel matters.

46.     Defendants admit that Plaintiff's August 31, 2019 report was admittedly based on hearsay and second-hand information, rather than Plaintiff's direct involvement or observation of the alleged incidents reported. Defendants are without information to admit or deny whether the allegations set forth in Plaintiff's complaint were based on information provided to Plaintiff by staff or manufactured out of whole cloth by Plaintiff in retaliation for a prior complaint lodged against him, a personal vendetta against Dr. Kessler, anger over Defendants' terminating his role as CMO, or some other basis and, therefore, deny the allegations concerning the alleged basis for Plaintiff's complaint. Defendants admit Plaintiff reported allegations of sexual harassment and substandard clinical care to MEC in a letter delivered to Dr. William Freund, who was President of Medical Staff.

47.     Defendants admit that Plaintiff's complaint included the allegations set forth in Paragraph 47. Plaintiff's allegations, however, were false and/or could not otherwise be substantiated by objective data. Dr. Kessler's conversion rate when performing laparoscopic gallbladder removal surgery was within the range Plaintiff acknowledged was "legitimately … appropriate;" there was no "binder of events documenting Dr. Kessler's poor clinical care;" and no evidence to corroborate Plaintiff's reported concerns regarding Dr. Kessler not wearing gloves when conducting sensitive

exams. Defendants thus deny the allegations in Paragraph 47 to the extent they suggest there was any truth to Plaintiff's complaint.

48.     Defendants admit that Plaintiff's complaint included the allegations set forth in Paragraph 48. Plaintiff's allegations, however, could not be substantiated following investigation and, in many respects, were directly contradicted by the nurses Plaintiff claimed reported concerns to him. Defendants thus deny the allegations in Paragraph 48 to the extent they suggest there was any truth to Plaintiff's complaint.

49.     Admitted in part, denied in part. Defendants admit that Plaintiff met with the individuals identified on or around October 16, 2019. Defendants deny the remaining allegations in Paragraph 49.

50.     Defendants are without sufficient information to admit or deny Plaintiff's allegation that nurses asked to speak with Dr. Green-Cheatwood and, therefore, deny the allegations in that respect. Defendants deny the remaining allegations in Paragraph 50. Contrary to Plaintiff's allegations, Dr. Green-Cheatwood informed Plaintiff that it was inappropriate for MEC to directly investigate and/or interview nurses, over whom MEC has not authority, and directed Plaintiff's reported concerns to the nursing supervisor. Dr. Green-Cheatwood also reminded Plaintiff that any nurse having concerns was free to anonymously report those concerns through appropriate channels, including SCH's Integrity Hotline.

51.     Denied.

52.     Denied.

53.     Admitted.

54.     Defendants admit Plaintiff provided a written response to Dr. Freund's December 29, 2019 letter and that the contents of Plaintiff's response are accurately summarized in Paragraph 54. Defendants, however, deny Plaintiff's complaint is a "whistleblower" complaint, that any of the allegations in Plaintiff's August 2019 complaint and/or his January 19, 2020 response are/were accurate, or that Defendants unlawfully retaliated against Plaintiff in any manner. Defendants further deny, to the extent inferred in Plaintiff's allegations, that MEC was Plaintiff's employer or that MEC, which is responsible only for oversight of credentialing and quality of care, could or did retaliate against Plaintiff in any manner.

55.     Admitted in part, denied in part. Defendants admit that Dr. Stucky informed Plaintiff that MEC was retracting the request to submit to a psychological assessment. Defendants deny the allegations to the extent the term "they" as used in Paragraph 55 suggests the request for psychological assessment and subsequent retraction were issued and/or made by any entity or body other than MEC, which was not Plaintiff's employer.

56.     Defendants are without sufficient information to admit or deny when Plaintiff learned an anonymous complaint had been filed against him with the Kansas Board of Healing Arts and, therefore, deny the allegations in Paragraph 56. Defendants,

however, admit that an anonymous complaint was, in fact, filed against Plaintiff with the Board.

57.     Defendants are without sufficient information to admit or deny whether the all of the allegations about Plaintiff raised in the anonymous complaint are true or false. On information and belief, some of the allegations in the anonymous complaint are accurate and/or are supported by objective evidence.

58.     Admitted in part, denied in part. Defendants admit that the KBHA investigated the anonymous complaint, that it took no action against Plaintiff, and that it closed the case. Defendants deny that the KBHA determined the complaint's allegations were not substantiated.

59.     Denied.

60.     Admitted in part, denied in part. Defendants admit SCH terminated Plaintiff's employment on February 12, 2020. Defendants deny Plaintiff engaged in any protected activity under Title VII and/or K.S.A. 65-4928. In any event, SCH terminated Plaintiff's employment for legitimate, non-discriminatory, non-retaliatory reasons. Defendants deny that Plaintiff was employed by CENTURA and/or CHPG and deny that CENTURA and/or CHPG terminated Plaintiff's employment.

61.     Denied. Dr. Green Cheatwood hand-delivered a letter to Plaintiff notifying him that SCH was terminating the employment agreement between Plaintiff and SCH pursuant to the without cause provisions in Section 4.1 of that agreement. Defendants

4858-2995-3124.1

admit the letter was signed by CHPG's President. Neither CENTURA nor CHPG employed Plaintiff and, therefore, deny terminating his employment.

62.     Denied as written. CHPG informed Plaintiff his employment with SCH was terminated under the without cause provisions of his employment contract with SCH. Defendants deny that SCH did not have a legitimate, non-discriminatory, non-retaliatory basis for terminating Plaintiff's employment with SCH.

63.     Denied.

64.     Admitted in part, denied in part. MEC did not employ Plaintiff and played no role in SCH's termination of Plaintiff's employment with SCH. SCH entered into no agreements with Plaintiff relative to the termination of his employment. The MEC, however, accepted Plaintiff's voluntary resignation of privileges and, through counsel for CENTURA, acknowledged that at the time of his voluntary resignation of privileges, Plaintiff was a member in good standing of the Medical Staff, there were no restrictions on his Medical Staff privileges, and that there were no pending Medical Staff investigations against him.

65.     Denied. At the time of his termination, Plaintiff was well-aware of the anonymous complaint filed against him with the Kansas Board of Healing of Arts and that the complaint would necessarily require SCH to investigate the allegations made.

66.     Denied.

67.     Defendants are without sufficient information to admit or deny whether Plaintiff filed a complaint with the EEOC on May 1, 2020 as opposed to a date on or around May 1, 2020, and, therefore, deny the allegations with respect to the date filed. All other allegations in Paragraph 67 are admitted.

68.     Denied.

69.     Defendants admit filing a report with the Kansas Board of Healing Arts in September 2020. Defendants are without sufficient knowledge to admit or deny when, if at all, Plaintiff declined to participate in mediation with the EEOC and, therefore, deny the remaining allegations in Paragraph 69 including the false implication that there was any causal connection between Plaintiff's rejection of the EEOC's invitation to participate in mediation and SCH's legally mandated reporting obligations.

70.     Admitted.

71.     Denied.

72.     Admitted in part, denied in part. Defendants admit that the KBHA investigated the complaint and that on May 25, 2022 it closed the case without taking any action. Defendants deny the KBHA determined the report's allegations were not substantiated.

73.     Denied.

74.     Denied. The report was made for legitimate non-discriminatory, non-retaliatory reasons and there is no causal connection between the report and Plaintiff's filing of an EEOC charge of discrimination some five months earlier.

75.     Denied.

76.     Admitted.

77.     Admitted.

78.     Admitted.

79.     Defendants are without sufficient information to admit or deny when Plaintiff learned additional reports of adverse findings were filed with the Kansas Board of Healing Arts and, therefore, deny the allegations in Paragraph 79 regarding Plaintiff's knowledge. Defendants admit filing three additional reports of adverse findings against Plaintiff with the Kansas Board of Healing Arts in January 2021.

80.     Admitted in part, denied in part. The reports were based on medical care provided by Plaintiff on March 3, 2018, February 3, 2018, and December 19, 2017.

81.     Admitted in part, denied in part. Defendants admit that on August 3, 2022 the KBHA notified Plaintiff that it was closing the cases. Defendants deny that the KBHA determined the complaints were not substantiated and further deny that the KBHA concluded that the treatment Plaintiff provided in the reported procedures met the applicable standard of care.

82.     Denied.

15

83.     Denied.

84.     Denied.

85.     Admitted.

86.     Admitted.

87.     Denied. At the time of Plaintiff's termination, Dr. Green Cheatwood simply told Plaintiff his employment contract was being terminated pursuant to the not for cause provision in his employment agreement.

88.     Denied. *Defendants* made no representations to Plaintiff following his termination. Rather, following termination of Plaintiff's employment, Plaintiff freely and voluntarily resigned his *Medical Staff privileges* and expressly indicated, by and through his attorney, "**that the sole reason Dr. Byrnes will no longer practice medicine at St. Catherine is St. Catherine's unexpected termination of his employment agreement. If his employment contract was not terminated and his malpractice insurance and payor credentialing still in place, Dr. Byrnes would continue to provide medical care to his community at St. Catherine for as long as possible**." (Emphasis in original). Plaintiff resigned his Medical Staff privileges with the understanding that he was, at the time of resignation, a member in good standing *of the Medical Staff*, that there were no restrictions on his Medical Staff privileges, and that there were no pending *Medical Staff investigations* against him. However, Plaintiff also knew at the time of his resignation that there was an anonymous complaint pending against him with the Kansas Board of Healing Arts that

raised many concerns regarding Plaintiff's standard of care and that SCH would be required to investigate those concerns and provide information to the Kansas Board of Healing Arts relating to the allegations in the complaint, which included, but were not limited to, allegations of multiple patient deaths that were not properly reviewed, an unusually high number of nicked bowels during surgeries, abandoning ICU cases, and improperly transferring patients out of SCH after dangerously mismanaging care.

89.     Denied. As set forth in response to the allegations in Paragraph 88 above, Plaintiff expressly acknowledged that the "sole" reason he resigned his Medical Staff privileges was because his employment agreement with SCH had been terminated.

90.     Denied. Defendants adopt and incorporate their answers to Paragraphs 88 and 89 as if fully set forth herein.

91.     Denied. SCH's legitimate, non-retaliatory, non-discriminatory reasons for terminating Plaintiff's employment have remained unchanged from the time of Plaintiff's termination to present.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied. Plaintiff knew or should have known SCH would be required to investigate the allegations made against him in the anonymous complaint submitted to the Kansas Board of Healing Arts.

97.     Denied. Defendants' investigation that led to the decision to terminate Plaintiff's employment was conducted in accordance with all applicable laws and policies.

98.     Denied.

99.     Denied.

## CLAIMS

100.    Denied. Defendants engaged in no unlawful conduct with respect to Plaintiff's termination, Plaintiff's employment, or any post-employment actions taken with respect to Plaintiff.

101.    Denied.

102.    Denied.

103.    Denied.

## Count 1: Title VII

104.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

105.    Defendants admit that CENTURA and SCH are employers and that Plaintiff is an employee as defined by Title VII. Defendants deny that CENTURA was

Plaintiff's employer. Defendants further deny that CHPG is an employer as that term is defined in Title VII.

106.   Denied. There was no reasonable factual basis for Plaintiff's complaint of alleged sexual harassment and the complaint was made in bad faith for improper purposes and thus, does not qualify as statutorily protected activity.

107.   Denied.

108.   Denied for the reasons set forth in response to Paragraph 106 above.

109.   Denied.

110.   Denied.

111.   Admitted.

112.   Denied.

**Count 2: K.S.A. 65-4928**

113.   Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

114.   Defendants admit that SCH is an employer and that Plaintiff is an employee as defined by K.S.A. 65-4928. Defendants deny all remaining allegations in Paragraph 114.

115.   Denied.

116.   Denied.

117.   Denied.

4858-2995-3124.1

118.   Denied.

119.   Denied. Defendants did not retaliate against Plaintiff in violation of K.S.A. 65-4928 and/or Kansas common law.

**Count 3: Americans with Disabilities Act**

120.   Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

121.   Defendants admit that CENTURA and SCH are employers and that Plaintiff is an employee as defined by the Americans with Disabilities Amendment Act ("ADAAA"). Defendants deny that CENTURA was Plaintiff's employer. Defendants further deny that CHPG is an employer as that term is defined in the ADAAA.

122.   Denied. The Medical Executive Committee and SCH personnel conducted a prompt and thorough investigation of Plaintiff's August 31, 2019 complaint submitted to Dr. Freund and found the allegations to be unsubstantiated or wholly without merit. Notwithstanding the demonstrable objective evidence contradicting Plaintiff's complaints regarding another surgeon's outcomes, Plaintiff persisted with his misguided, false accusations and exhibited other disturbing behaviors demonstrating poor and erratic judgment thus prompting the Medical Executive Committee to request Plaintiff to undergo a psychological assessment.

123.   Denied.

124.    Defendants are without sufficient information to admit or deny whether Plaintiff has a disability as that term is defined by the ADAAA and, therefore, deny the allegations set forth in Paragraph 124 regarding Plaintiff's disability status. Defendants further deny that they regarded Plaintiff as disabled. Plaintiff, therefore, is not afforded any protections by the ADAAA.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

## Count 4: Fraud

130.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

131.    Denied. SCH and CENTURA investigated the allegations raised in the anonymous complaint filed with the KBHA about Dr. Byrnes and in response to subpoenas issued to SCH as part of that KBHA case. The findings from that investigation prompted SCH to terminate Plaintiff's employment. SCH terminated Plaintiff's employment under the without cause provision of his employment contract. Following termination of his employment, Plaintiff voluntarily submitted his resignation of *Medical Staff* privileges at the hospital following acknowledgement by the MEC, through its

counsel, that Plaintiff was in good standing *with the Medical Staff*, that there were no restrictions of his *Medical Staff* privileges, and that there were no pending *Medical Staff* investigations pending against him. Defendants told no lies at the time of Plaintiff's termination, at the time he voluntarily surrendered his *Medical Staff* privileges, or at any time thereafter. Defendants further adopt and incorporate their answers to Paragraphs 88-89 as if fully set forth herein.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

**Count 5: Fraud by Silence**

137.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

**Count 6: Negligent Misrepresentation**

144.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

**Count 7: Promissory Estoppel/Detrimental Reliance**

150.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

**Count 8: Defamation**

155.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

156.    Denied.

157.    Denied.

158.    Denied.

159.    Denied.

160.    Denied.

## Count 9: Abuse of Process

161.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

162.    Denied.

163.    Denied.

164.    Denied.

## Count 10: Common Law Retaliation

165.    Defendants adopt and incorporate all prior paragraphs set forth in this Answer as if fully set forth herein.

166.    Paragraph 166 simply provides that Count 10 is asserted in the alternative; thus no allegations are made to which an answer is required.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

## DAMAGES AND RELIEF ALLEGATIONS

173.    Denied.

174.    Denied.

175.    Paragraph 175 is denied because Defendants have engaged in no unlawful conduct relative to Plaintiff for which Plaintiff would be entitled to relief.

## JURY TRIAL DEMAND

Defendants request a jury trial on all claims so triable.

## GENERAL DENIAL & AFFIRMATIVE DEFENSES

1.    Defendants deny all allegations not expressly admitted herein, including without limitation any allegations inferred within headings utilized by Plaintiff in the Third Amended Complaint.

2.    Plaintiff fails to state a claim for retaliation under Title VII for which relief can be granted.

3.    Plaintiff fails to state a claim for discrimination or retaliation under the ADAAA for which relief can be granted.

4.    Plaintiff fails to state a claim for retaliation in violation of K.S.A. 65-4928 for which relief can be granted.

5.    Plaintiff fails to state a claim for fraud, fraud by silence, negligent misrepresentation, promissory estoppel/detrimental reliance, defamation, abuse of process, or common law retaliation for which relief can be granted.

6.     Plaintiff's fraud and fraud by silence claims fail for lack of specificity required by law.

7.     Plaintiff did not possess a good faith basis for his reports of alleged sexual harassment and/or substandard clinical care.

8.     Plaintiff cannot establish a prima facie case of "regarded as" disability discrimination under the ADAAA.

9.     Plaintiff lacks standing to and/or cannot invoke the prohibitions against retaliation proscribed in K.S.A. 65-4928.

10.    Defendants are immune from civil liability for some or all of Plaintiff's claims pursuant to K.S.A. 65-4926.

11.    Defendants are immune from civil liability for some or all of Plaintiff's claims pursuant to 42 U.S.C. 11111(a)(1).

12.    SCH terminated Plaintiff's employment contract for legitimate, non-discriminatory, non-retaliatory reasons and Plaintiff cannot establish pretext.

13.    SCH submitted reports of adverse findings concerning Plaintiff to the KBHA pursuant to its legal reporting obligations and for legitimate, non-discriminatory, and non-retaliatory reasons, which were not a pretext for a retaliatory or discriminatory motive or intent.

14.    Plaintiff's claims are barred in whole or in part by promissory estoppel.

15.     Plaintiff's claims are barred in whole or in part by the after-acquired evidence doctrine.

16.     Plaintiff's damages, if any, are nullified in whole or in part by the after-acquired evidence doctrine.

17.     Plaintiff failed to mitigate his damages, if any.

18.     Some or all of Plaintiff's damages, to the extent they exist, were caused, in whole or in part, by sources other than Defendants, including but not limited to Plaintiff. Accordingly, any such damages should either be denied completely or apportioned according to the evidence.

19.     Because discovery in this case is ongoing, Defendants cannot fully anticipate all defenses that may be applicable to the action. Accordingly, Defendants expressly reserve the right to assert additional defenses warranted by discovery of facts or circumstances not yet known.

4858-2995-3124.1

Dated: May 17, 2023.        Respectfully submitted,

KUTAK ROCK LLP

s/ Richard A. Olmstead
Richard A. Olmstead     KS#19946
Jason D. Stitt        KS#22216
121 S. Whittier St., Suite 330
Wichita, KS 67207-1405
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Richard.Olmstead@KutakRock.com
Jason.Stitt@KutakRock.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May 2023, a true and correct copy of the above and foregoing was filed with the Clerk of the United States District Court for the District of Kansas using the CM/ECF system, which will automatically provide electronic notification of the same to the following counsel of record:

Boyd A. Byers
bbyers@foulston.com

Sarah E. Stula
sstula@foulston.com

*Counsel for Plaintiff*

s/ Richard A. Olmstead
Richard A. Olmstead

4858-2995-3124.1